UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

Giraud S. Julmice and Ingrid Adrien,

                      Debtors.

----------------------------------------------------------------x
Richard E. O'Connell,

                      Plaintiff,

-against-

Wells Fargo Bank, N.A., Clerk of the Surrogate
Court of Kings County, Australian Open
Realty LLC, 1074 Nostrand Avenue Realty
Corp., Kensington Land Services, Inc., Ramapo
Realty LLC, Joshua Funding Corp., Danny
Siony *aka* Rahim Siuny Kalimi, Shirin Kalimi
*aka* Shirin Siouny, Alexander Almonte, Esq.,
and Almonte & Brativsky PLLC,

                      Defendants.

----------------------------------------------------------------x

Chapter 7

Case No. 10-45737-CEC

Adv. Pro. No. 10-1324-CEC

# DECISION

Appearances:

| | |
|---|---|
| David A. Blansky, Esq. | Michael T. Sucher |
| Jordan Pilevsky, Esq. | 26 Court Street |
| LaMonica Herbst & Maniscalco LLP | Brooklyn, NY 11242 |
| 3305 Jerusalem Avenue | Attorney for Australian Open Realty LLC, |
| Wantagh, NY 11793 | Kensington Land Services, Inc., Joshua |
| Attorneys for the Ch. 7 Trustee | Funding Corp., Danny Siony *aka* Rahim |
| | Siuny Kalimi, and Shirin Kalimi *aka* Shirin |
| | Siouny. |

CARLA E. CRAIG
CHIEF UNITED STATES BANKRUPTCY JUDGE

This matter comes before the Court on the motion of Australian Open Realty LLC ("Australian Open"), Kensington Land Services, Inc. ("Kensington"), Joshua Funding Corp. ("Joshua Funding," and with Australian Open and Kensington, the "Corporate Defendants"), Danny Siony *aka* Rahim Siuny Kalimi ("Danny"), and Shirin Kalimi *aka* Shirin Siouny ("Shirin," and together with the Corporate Defendants and Danny, the "Movants"), seeking a stay of this adversary proceeding as to the Movants pending resolution of criminal charges pending against Danny and Shirin, who have been indicted in the Southern District of New York on federal charges including mortgage and wire fraud. The Movants argue that a stay is necessary to protect the individual defendants' Fifth Amendment rights, which they contend will be prejudiced if they are required to defend this adversary proceeding while the criminal charges are pending. Plaintiff Richard E. O'Connell (the "Trustee") opposes the motion. For the following reasons, the motion is granted to the extent that this adversary proceeding is stayed, in part, with respect to the Movants, until September 9, 2011, subject to possible further extension.

## Jurisdiction

This Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

Background

The following facts are undisputed.

On June 17, 2010, Giraud S. Julmice and Ingrid Adrien ("Ingrid"), as joint debtors, filed a voluntary petition under chapter 7 of the Bankruptcy Code. The Trustee was appointed as chapter 7 trustee of the debtors' bankruptcy estate.

On December 3, 2010, the Trustee commenced this adversary proceeding (the "Adversary Proceeding") alleging, among other things, that the Movants engaged in mortgage fraud. Relief sought includes the avoidance of a mortgage on property located at 1074 Nostrand Avenue, Brooklyn, New York (the "Property") conveyed to Wells Fargo Bank, NA ("Wells Fargo") by Ingrid and her father Jacques.

The following are the relevant allegations of the complaint. Prior to 2006, the Property was owned the estate of Immacula Beaubrun for the benefit of Jacques and his three siblings. (Compl. ¶¶ 20-21.) In July 2005, an action to foreclose on the Property was commenced in state court, and a judgment of foreclosure and sale was entered on May 23, 2006. (Compl. ¶¶ 24, 25.) Danny and Shirin, through Australian Open, purchased the Property for $485,000 at an auction held on July 6, 2006. (Compl. ¶¶ 26-32, 35.) After the auction, Jacques and his sister, Carol, approached Danny to purchase the Property. (Compl. ¶ 33.) Danny agreed to sell the Property to Jacques and Carol on the condition that they not retain independent counsel. (Compl. ¶ 34.) By referee's deed dated December 15, 2006, title to the Property was vested in Australian Open. However, "[a]s part of this fraudulent scheme," the deed was not recorded until October 24, 2007. (Compl. ¶ 36.)

On December 20, 2006, a closing was held to transfer the Property from Australian Open to 1074 Nostrand Avenue Realty Corp. ("1074 Nostrand"), an entity created by Danny

Case 1-10-01324-cec   Doc 37   Filed 06/06/11   Entered 06/06/11 16:27:06

3

purportedly for the benefit of Jacques, for a purchase price of $700,000.  (Compl. ¶ ¶ 37, 39.) Financing from Ramapo Realty in the amount of $550,000 (the "Ramapo Mortgage") was obtained by Danny and Shirin on behalf of 1074 Nostrand.  (Compl. ¶ 40.)  The proceeds of the Ramapo Mortgage were used by Australian Open to pay the auction price for the Property.  (Compl. ¶ 41.)  At the closing, substantial sums were paid by Jacques to Danny and Shirin.  (Compl. ¶ 48.)

Kensington, another entity controlled by Shirin, provided the title services in connection with this closing between Australian Open and 1074 Nostrand.  (Comp. ¶ ¶ 42-43.)  Kensington "collected inflated transfer taxes, mortgage recording taxes, title insurance policy premiums and other non-traditional fees . . . ."  (Compl. ¶ 44.)  The documents from this closing, including the deed to 1074 Nostrand and the Ramapo Mortgage, were never recorded, and the fees collected by Kensington were never disbursed.  (Comp. ¶¶ 45-46.)

In June 2007, a second closing was held to transfer the Property from Australian Open to Jacques and Ingrid.  (Comp. ¶ 49.)   By deed dated June 20, 2007, and recorded on October 24, 2007, Australian Open again transferred the Property to Jacques and Ingrid for the purchase price of $565,000.  (Compl. ¶ 50.)  Danny, Shirin, and/or Australian Open "made false and misleading representations with respect to the title history of the . . . Property, closing costs and other material misrepresentations" to induce Wells Fargo to provide financing.  (Compl. ¶ 51.)  One of the misrepresentations was included in a Real Property Transfer Report prepared by Danny and Shirin, which listed the purchase price of $700,000, inducing Wells Fargo to provide financing of $569,832 to Jacques and Ingrid to purchase the Property (the "Wells Fargo Mortgage").  (Compl. ¶¶ 68-70.)  A second Real Property Transfer Report was prepared, but not executed, reflecting a purchase price of $565,000.  (Compl. ¶¶ 68, 71-72.)  Both reports were recorded, but

the transfer taxes disbursed at the second closing were calculated based upon the lower sales prices reflected on the unexecuted Real Property Transfer Report.  (Compl. ¶ ¶ 73-74.)

In addition to the Wells Fargo Mortgage, Jacques and Ingrid were induced to provide Australian Open with a mortgage of $140,403.81 (the "Australian Open Mortgage").  (Compl. ¶ 56.)  Kensington provided the title services at this second closing.  (Compl. ¶ 53.)  Shirin notarized all the necessary documents at the second closing, including the Wells Fargo Mortgage and the Australian Open Mortgage.  (Compl. ¶¶ 52, 57.)  The proceeds of the Wells Fargo Mortgage were used to satisfy the Ramapo Mortgage, and were also disbursed to Kensington and Joshua Funding (an entity owned by Danny and managed by Shirin).  (Compl. ¶¶ 58-60.) Kensington collected approximately $100,000 in title fees and taxes from the proceeds of the Wells Fargo Mortgage, but remitted less than half that amount to the taxing authorities.  (Compl. ¶ 61.)

On October 1, 2009, Danny and Shirin were indicted on "various federal criminal charges including mortgage fraud and wire fraud" (the "Indictment") in an action captioned <u>United States of America v. Danny Siony a/k/a "Rahim Siuny Salimi," Shirin Kalimi a/k/a "Shirin Siouny," Emmanuel Roy, and Tariff Dill (09-cr-00940-TPG-1)</u>, pending in the District Court for the Southern District of New York (the "Criminal Action").  (Compl. ¶ 80.)  The complaint in the Adversary Proceeding alleges that "[t]he Indictment illustrates numerous acts of mortgage fraud perpetrated by Danny and Shirin that are akin to the scheme detailed" in the complaint.  (Compl. ¶ 81.)

The Indictment, which is annexed to the complaint at Exhibit B, alleges a fraudulent scheme whereby Danny and Shirin "fraudulently brokered, obtained, and assisted others in obtaining certain home mortgage loans from various lending institutions . . . under false and

fraudulent pretenses," and "at terms that the lenders otherwise would not have funded." (Indictment ¶¶ 6- 7.) The scheme involved the purchase of properties at foreclosure auction sales, whereby Danny placed deposits to secured winning bids, and the balances of the purchase prices "were funded at least in part by the proceeds of the home mortgage loans obtained through the use of straw buyers." (Indictment ¶ 8.) Danny recruited straw buyers by representing that purchasing the properties would be a good investment, and Shirin obtained the mortgage loans for the straw buyers by falsifying the straw buyer's employment, income, and asset information in the loan applications. (Indictment ¶¶ 9-10.) Shirin also falsified title reports to reflect that Australian Open held title to the properties. Danny and Shirin profited by this scheme because the mortgage proceeds were greater than the foreclosure auction price. (Indictment ¶12.) The Indictment lists eleven properties as examples of the fraudulent scheme; the Property is not included in this list. (Indictment ¶ 21.)

On February 7, 2011, the Movants filed this motion to stay the adversary proceeding pending resolution of the Criminal Action, arguing that Danny's and Shirin's Fifth Amendment rights will be compromised if this adversary proceeding is not stayed.

## Legal Standard

It is undisputed that a court has discretion to stay a civil action during the pendency of a criminal action if justice so requires. United States v. Kordel, 397 U.S. 1, 12 n.27 (1970); Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1970); Crawford & Sons Ltd. v. Besser, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004); Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995). However, "it is equally well understood that such a stay is not constitutionally required whenever a litigant finds himself facing the dilemmas inherent in pursuing civil litigation while being the subject of a related

6

criminal investigation." Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001). See also Brock v. Tolkow, 109 F.R.D. 116, 119 (E.D.N.Y. 1985) ("[I]t is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution.")

To prevail on a motion for a stay, a defendant must show that the continuation of the civil proceeding will unduly prejudice him or interfere with his constitutional rights. See Sterling Nat'l Bank, 175 F. Supp. 2d at 575-576. A court will balance the following factors when determining whether to stay a civil proceeding pending resolution of a criminal action:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
> (2) the status of the criminal case, including whether the defendants have been indicted;
> (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay;
> (4) the private interests of and burden on the defendants;
> (5) the interests of the courts; and
> (6) the public interest.

Hicks v. City of New York, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003); In re WorldCom, Inc. Sec. Litig., Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501 at *4 (S.D.N.Y. Dec. 5, 2002); Transworld, 886 F. Supp. at 1139. See Volmar Distribs., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

When an indicted criminal defendant is also a defendant in a related civil action, courts in this Circuit generally grant a stay of the civil matter. Hicks, 268 F. Supp. 2d at 242. As Judge Lynch has explained:

> When a defendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest. Moreover, if the potential prejudice to the defendant is particularly high post-indictment, the prejudice to the plaintiff of staying proceedings is somewhat reduced, since the criminal litigation has reached a crisis that will lead to a reasonably speedy resolution.

Sterling Nat'l Bank, 175 F. Supp. 2d at 577. See also Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp., 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002) ("Granting a stay of discovery may be especially appropriate where a party under criminal indictment is also required to defend a civil suit involving the same matter.") "Further, failure to grant a stay may extend discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b); may expose the defense's theory to the prosecution in advance of trial; or may otherwise prejudice the criminal case." RW Prof'l Leasing, 225 F. Supp. 2d at 265. Ultimately, the goal is to avoid prejudice. Volmar, 152 F.R.D. at 39.

## Discussion

A.   Danny and Shirin's Request for a Stay

   1. Overlap of Issues

The most important factor to be considered in determining whether it is appropriate to stay civil litigation related to a pending criminal matter is the extent to which the issues in the criminal case overlap with those presented in the civil case. See Transworld, 886 F. Supp. at 1139; Volmar, 152 F.R.D. at 39 (citing Parallel Civil and Criminal Proceedings, 129 F.R.D. 201,

203 (S.D.N.Y. 1989)).  This is so because "self-incrimination is more likely if there is a significant overlap." Transworld, 886 F. Supp. at 1139.  Conversely, "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay."  Id.

On this motion, the principal dispute is whether the issues in the Criminal Action and in the Adversary Proceedingسufficiently overlap to warrant a stay of the Adversary Proceeding.  The Trustee argues that the underlying facts of the fraud alleged in the Adversary Proceeding are significantly different from the fraudulent conduct alleged in the Criminal Action.  He points out that the Property is not among the "Target Properties" listed in the Indictment; that the transactions that are the subject of the Indictment involved straw buyers; and that, in the transactions alleged in the Indictment, Australian Open was fraudulently represented to the lenders as the record owner of the Target Properties although they were actually owned by the straw buyers.  (Trustee's Mem. Of Law in Opp'n, at 4.)   Because of these differences, the Trustee argues, the issues do not directly overlap and a stay is not warranted.

A review of the Indictment and the complaint leads to the conclusion that the wrongful conduct alleged in the Adversary Proceeding is sufficiently similar to the allegations contained in the Indictment to warrant a stay, at least to the limited extent granted herein.   The Indictment and the complaint both allege that the Danny and Shirin engaged in mortgage fraud whereby they placed winning foreclosure bids and agreed to sell the properties to purchasers before they held title to the properties (either directly or through entities).  Both actions also allege that Danny and Shirin obtaining financing on the purchasers' behalf based upon false and misleading mortgage applications, in amounts greater than the foreclosure auction bid.  Although the underlying method of executing the alleged schemes may differ, i.e., using a straw buyer  (as alleged in the Indictment) versus selling the property to a beneficiary of the former owner's

estate (as alleged in the complaint), and although the Property was not listed in the Indictment as an example of Danny and Shirin's fraud, the allegations of fraudulent conduct are substantially similar.  Indeed, the complaint states that "[t]he Indictment illustrates numerous acts of mortgage fraud perpetrated by Danny and Shirin that are akin to the scheme detailed" in this action. (Compl. ¶ 81.)  Therefore, this factor weighs in favor of a stay of the Adversary Proceeding.

2. The Status of the Criminal Action

As discussed above, a civil proceeding will generally be stayed if the defendants have been indicted.  Hicks, 268 F. Supp. 2d at 242.  See also Transworld, 886 F. Supp. at 1139.  This is because "the likelihood that a defendant may make incriminating statement is greatest after an indictment has issued, and . . . the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." Transworld, 886 F. Supp. at 1139.

The Trustee argues that, although the defendants have been indicted, this factor does not weigh in favor of a stay, because the Indictment was returned more than 18 months ago, and "there is no indication that the Criminal Action will be resolved quickly."  (Trustee's Mem. of Law in Opp'n, at 6.)

Danny and Shirin were indicted in October 2009.  While a trial date has not been set, the matter was scheduled for a conference on May 19, 2011, and it appears that the Criminal Action may be moving closer to resolution.  At the hearing on this motion, the Movants' counsel represented that the Criminal Action "has been actively prosecuted and actively defended," and there "have been increasingly pointed discussions and very sensitive discussions about what, if any, damages may have been incurred as a result of the acts complained of."  (Tr.[1] at 6.)  The Movants' counsel further represented that, based upon conversations with the Danny and

---

[1] "Tr." refers to the transcript of the hearing held on April 7, 2011.

Shirin's criminal counsel, there is a possibility that the Criminal Action "can be declared trial-ready at this very next conference, or there may be a plea at this conference." (Tr. at 7.)

Based upon Movants' counsel's representations concerning the status of the Criminal Action, this Court concludes that this factor weighs in favor of a stay, at least for a limited period of time.

   3.   <u>Private Interests of Plaintiff Weighed Against the Prejudice to the Plaintiff</u>

The Trustee argues that he, in his capacity as fiduciary for the debtors' estate, will be prejudiced by a stay of the Adversary Proceeding, both because of the potential for loss of evidence, and because of the delay of any recovery and distribution to the creditors. The Trustee points out that the first closing described in the complaint took place in December, 2006, and argues that banking institutions and other potential witnesses may not retain records pertaining to the transactions for much longer.

The Trustee's concern about the potential for loss of evidence and delay, if the Adversary Proceeding were stayed indefinitely and in all respects, would be understandable. This concern may be addressed, however, by issuing a stay of limited duration, subject to extension upon reevaluation of the factors at the conclusion of the stay period. Moreover, Movants seek a stay only as to themselves, so discovery may continue as to the other defendants and as to any third parties. In addition, the stay is limited to the extent that Trustee may seek document discovery from Movants, provided that the discovery does not relate to the Target Properties identified in the Indictment; and any objection to such a discovery request based upon prejudice to the individual defendants' Fifth Amendment rights can be determined if it is raised. Of course the Trustee may seek to terminate the stay entirely in the event it is no longer appropriate. <u>See</u>

United States v. Certain Real Property Known as 1344 Ridge Rd., 751 F. Supp. 1060, 1063 (E.D.N.Y. 1989); Tolkow , 109 F.R.D. at 119-120.

The Trustee has also argued that, in the event that a stay is issued, he should be able to seek document discovery from the defendants and others to the extent permitted by the "required records" doctrine, which provides an exception to the protection afforded by the Fifth Amendment for "'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established.'" Shapiro v. United States, 335 U.S. 1, 33 (1948) (quoting Davis v. United States, 328 U.S. 582, 590 (1946).)  The extent, if any, to which this doctrine applies to any discovery sought by the Trustee is an issue that can be addressed in the context of  objections to particular document requests.

4. Private Interests of and Burden on the Defendants; Interests of the Courts; and the Public Interest

The remaining three factors, to the extent relevant in this case, weigh in favor of a stay, at least for a limited period.  A stay will protect the individual defendants' Fifth Amendment rights. It is possible that, if the criminal action is resolved during the pendency of the stay, that discovery in the Adversary Proceeding may be reduced or simplified.  The public interest is not materially affected by the limited stay granted herein.

B.      Trustee's Request for an Extension

The Trustee seeks an extension of time to effectuate service on 1074 Nostrand to sixty days after the stay expires. This extension is unnecessary because the stay relates only to the Movants and does not include 1074 Nostrand. However, pursuant to Rule 4(m) of the Civil Rules of Federal Procedure, made applicable by Rule 7004 of the Federal Rules of Bankruptcy Procedure, this Court will grant a short extension of time for the Trustee to effectuate service of process on 1074 Nostrand, in the event he has not done so.

Conclusion

For the foregoing reasons, this Adversary Proceeding is stayed with respect to the Movants up to and including September 9, 2011, subject to extension upon application of the Movants. This relief is without prejudice to the Trustee's ability to seek to terminate the stay prior to its expiration. The Trustee's time to effectuate service of process on 1074 Nostrand is extended to June 17, 2011.



**Dated: Brooklyn, New York**
       **June 6, 2011**

     **Carla E. Craig**
**United States Bankruptcy Judge**